NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VERNASSA SMITH**
*Petitioner,*

v.

**DEPARTMENT OF TRANSPORTATION,**
*Respondent,*

---

2011-3019

---

Petition for review of the Merit Systems Protection Board in case No. AT0752090893-I-1.

---

Decided: March 17, 2011

---

VERNASSA SMITH, of Fayetteville, Georgia, pro se.

CHARLES M. KERSTEN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and HAROLD D. LESTER, JR., Assistant Director.

---

Before RADER, *Chief Judge*, MOORE and O'MALLEY, *Circuit Judges*.

PER CURIAM.

This case is an appeal from a decision by the Merit Systems Protection Board (Board) affirming the agency's removal of Vernassa Smith from her position as a Contract Specialist with the Federal Highway Administration's (FHA's) Atlanta, Georgia Resource Center. Because there is substantial evidence supporting the Board's decision, and because the decision was neither an abuse of discretion nor obtained without procedures required by law, we *affirm*.

## BACKGROUND

Ms. Smith was employed with the FHA as a warranted contracting officer, and served as the administrative team leader for the agency's Atlanta, Georgia resource center. In that capacity, Ms. Smith was responsible for monitoring and maintaining the budget for the entire resource center, and was subject to a number of policies related to budgeting and the expenditure of funds for employee training.

One such policy was contained in a March 18, 2005 email from Mr. Gary Corino, Ms. Smith's supervisor, to Ms. Smith and others, which states that Mr. Corino "will approve all training courses and expenditure of funds for the people that [he] supervise[s]." Other policies were contained in Standard Operating Procedures (SOPs). One SOP, dated May 26, 2005, indicates that "[o]nly the individual's first level supervisor . . . has authority to approve the individual's participation in the course and funding for the course." Another SOP, drafted by Ms. Smith and circulated to the Atlanta office on March 2, 2005, indicates that a purchase request must be prepared

for all purchasing requirements. A third SOP explains that "[a] purchase request shall be submitted for all requests for training." Ms. Smith notified the Resource Center's employees about this SOP via email on June 1, 2005. Finally, the 2005 Guidelines for Use of Technology and Innovation Funds (Technology Transfer Guidelines), explain that Technology Transfer funds must be used for "activities directly related to carrying out the purpose of the appropriation" and prohibit the use of funds as "[a] supplement to any other appropriation."

During Ms. Smith's time as a contracting officer, another employee, Ms. Jacqueline Hill-Brown, used agency funds to pay for tuition and expenses towards a masters degree from the public health school at Emory University. Ms. Smith, in her role as contracting officer, approved many of the payments related to Ms. Hill-Brown's education. Some of the expenses were paid using Technology Transfer funds, and Ms. Smith also approved purchase requests which did not have any indication of prior approval from Mr. Corino. In sum, Ms. Smith approved over $15,000 in training expenditures for Ms. Hill-Brown in 2005.

Management became aware of Ms. Hill-Brown's expenditures in August 2006, when an employee at the Resource Center found a purchase order for one of Ms. Hill-Brown's classes at Emory left in a copier. The purchase order was brought to management's attention and, after an investigation, a notice of proposed removal was issued for both Ms. Hill-Brown and Ms. Smith. Both women were subsequently indicted for felony theft; Ms. Hill-Brown was convicted but Ms. Smith was not.

Ms. Smith was first removed from employment in December 2006. She appealed to the Board and the removal was reversed on procedural grounds. In March 2009, the

agency issued another notice of proposed removal which charged Ms. Smith with (1) failure to follow procedures, (2) negligent performance of duties, (3) lack of candor, and (4) willfully aiding Ms. Hill-Brown in the unauthorized use of government funds. Ms. Smith was again removed from employment.

Once again, Ms. Smith appealed to the Board. In an initial decision, the Board found the agency proved all four charges by a preponderance of the evidence, and, after considering the factors from *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 307-08 (1981), found that the removal penalty was reasonable. Ms. Smith petitioned for review, which was denied, and now appeals the Board's final decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The relevant question is not what we would decide *de novo*, but whether the determination on appeal is supported by substantial evidence on the record. *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987). Credibility determinations are virtually unreviewable on appeal. *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).

Ms. Smith first argues that there is not substantial evidence supporting the charge that she failed to follow procedure. While she claims that she did not know that the various SOPs were binding policy, Mr. Corino testified that the March 2, 2005 SOP (which Ms. Smith drafted and distributed) was intended to be a final version. He also testified that the May 24, 2005 SOP was effective June 1, 2005, the date Ms. Smith distributed it to the office. Mr. Corino further testified that his March 18, 2005 email, which stated he would "approve all training courses and expenditure of funds," was sent as a direct result of Ms. Hill-Brown's prior use of funds for her coursework. Although Ms. Smith argues this email was only directed to training funds, and that she did not need to obtain prior approval for courses paid for with other categories of funding, the email does not explicitly limit Mr. Corino's desire to approve "all training courses" to a particular source of funding. The Board considered Ms. Smith's testimony in support of her position, and found her testimony was not credible. Based on this evidence and credibility determination we find the Board's decision is supported by substantial evidence.

Ms. Smith also disputes that she was negligent when she approved expenditures for two public health courses and accepted a sole source justification for a purchase order. Ms. Smith contends that Mr. Corino previously supported Ms. Hill-Brown's application for Academic Studies Program funding, and thus implicitly endorsed her public health studies. Mr. Corino's nominating letter for Ms. Hill-Brown, however, only mentions statistics courses, not public health courses, and the Academic Studies Program was a distinct training opportunity. Nevertheless, Ms. Smith subsequently approved courses entitled "Intro to U.S. Health Care System" and "Behavioral Science in Public Health" which are facially unre-

lated to the agency. Ms. Smith's negligence in approving these courses is supported by the fact that, when another employee discovered a purchase order related to Ms. Hill-Brown's public health coursework, the expenditure was deemed sufficiently irregular to be brought directly to management's attention. Further, while Ms. Smith claims she conducted a sole source analysis for one of Ms. Hill-Brown's classes, the justification is actually dated after Ms. Hill-Brown was enrolled in the class, and does not list other sources considered. Taken together, this constitutes substantial evidence supporting the Board's finding of negligence.

Ms. Smith also argues that there was insufficient evidence to find she had the specific intent needed to support the charge of aiding another in the unauthorized use of government funds. She claims she reasonably interpreted Mr. Corino's March 18, 2005 email, which stated "I will approve all training courses and expenditure of funds for the people that I supervise," to only apply to a narrow category of funds. As discussed above, however, the email was not explicitly limited to any particular source of funding, and was sent in response to Ms. Hill-Brown's prior misuse of funds. Ms. Smith also claims she did not receive the relevant policy documents, but there is evidence that Ms. Smith received the May 26, 2005 SOP via email, and had a copy of the 2005 Technology Transfer guidelines on her computer. Ms. Smith also argues that the fact that she did not get any personal benefit from helping Ms. Hill-Brown and consistently furnished expense reports to Mr. Corino indicates she lacked the requisite intent. The Board, however, considered testimony regarding Ms. Smith's prior work habits, made credibility determinations regarding Ms. Smith's testimony, observed her demeanor, and concluded that the record as a whole demonstrated that she intended to aid

Ms. Hill-Brown in expenditures she knew were not authorized. We believe, given the evidence and credibility determinations, there is substantial evidence supporting the Board's decision.

Ms. Smith also disputes the lack of candor charge, and claims her reports to Mr. Corino on Ms. Hill-Brown's expenditures were generally accurate. While these expenditures were included in Ms. Smith's reports, Ms. Hill-Brown's coursework was initially characterized as "other." Mr. Corino specifically asked Ms. Smith to provide an itemized listing of the "other" expenditures. In response, Ms. Smith indicated that the expenditure was a registration fee, but did not explain the expense was for public health coursework. Mr. Corino testified that he understood registration fee to mean a fee for a conference, not tuition. While Ms. Smith's reporting is arguably technically correct, it omits a key fact: that the registration fee was tuition for a public health course, and not a conference registration fee. *See Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002) (Lack of candor "may involve a failure to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete."). We conclude that substantial evidence supports the Board's finding that Ms. Smith's actions lacked candor.

Finally, Ms. Smith challenges the severity of her punishment, asserts that her misconduct was no different than other employees, and claims that her punishment was disparately harsh. The Board considered Ms. Smith's argument, and found that, unlike Ms. Smith, the other employees who approved Ms. Hill-Brown's expenditures were not contracting officers charged with protecting the agency from waste. The Board also found that the other employees who approved Ms. Hill-Brown's expenditures approved relatively lower dollar amounts than Ms. Smith.

For example, a report on Ms. Hill-Brown's expenditures indicates that in fiscal year 2005, she had $19,792.37 in total training expenses, of which $15,531.00 (78%) was approved by Ms. Smith.  In light of this evidence, we conclude the Board did not abuse its discretion by finding that Ms. Smith's penalty was reasonable under the circumstances.

We have considered Ms. Smith's additional arguments on appeal and find them to be without merit.

**AFFIRMED**

COSTS

No costs.