UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2016 MSPB 19

Docket No. DC-0752-15-0266-I-1

**David A. Fargnoli,**

**Appellant,**

**v.**

**Department of Commerce,**

**Agency.**

May 6, 2016

Lawrence Berger, Esquire, Glen Cove, New York, for the appellant.

Alpana K. Gupta, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1 The appellant has filed a petition for review of the initial decision that sustained his removal. For the reasons set forth below, we GRANT his petition and REMAND the appeal for further adjudication.

BACKGROUND

¶2 From September 12, 2010, until his removal on December 12, 2014, the appellant was employed as a Criminal Investigator with the Office of Export Enforcement (OEE), in the agency's Bureau of Industry and Security (BIS). Initial Appeal File (IAF), Tab 5 at 55, Tab 7 at 113. He previously was employed

by the Department of Labor (DOL), Office of Inspector General (OIG). IAF, Tab 6 at 176.

¶3      On August 14, 2014, the appellant's first-level supervisor, C.V., Supervisory Criminal Investigator, proposed to remove the appellant based on three charges: (1) Unauthorized Possession of Equipment; (2) Conduct Unbecoming a Law Enforcement Officer (4 specifications); and (3) Lack of Candor (6 specifications). IAF, Tab 5 at 262-77. The appellant responded orally and in writing, and made supplemental oral and written responses after receiving additional documentation from the agency. *Id*. at 56-258. On December 9, 2014, the appellant's second-level supervisor, N.K., Assistant Director, National Security Programs, OEE, issued a decision letter sustaining the proposed removal. *Id*. at 39-54. In his decision, N.K. found that the evidence supported the charges, except for specifications 1, 2, and 3 of the lack of candor charge, and that the penalty of removal was appropriate for the sustained misconduct. *Id*.

¶4      The appellant filed an appeal of his removal on December 18, 2014. IAF, Tab 1. Following a hearing, the administrative judge issued an initial decision on the removal action. IAF, Tab 19, Initial Decision (ID). In his decision, the administrative judge sustained all three charges, although he did not sustain specification 4 of the conduct unbecoming charge. *Id*. at 3-28. He further found that the agency established a nexus between the sustained misconduct and the efficiency of the service and that the penalty of removal was reasonable. *Id*. at 29-31.

¶5      On petition for review, the appellant concedes that the record supports specification 1 of the second charge, concerning a car accident in a Government-owned vehicle (GOV), but he contests the administrative judge's findings on the remaining charges and specifications. Petition for Review (PFR) File, Tab 1. Thus, the following charges and specifications remain in dispute: (1) Unauthorized Possession of Equipment; (2) Conduct Unbecoming a Law Enforcement Officer (specifications 2 and 3); and (3) Lack of Candor

(specifications 4, 5, and 6).  The appellant contends that the car accident alone would not warrant removal, but he does not otherwise contest the administrative judge's findings regarding nexus and penalty.  *Id*.  The agency has filed a response, to which the appellant has replied.  PFR File, Tabs 3-4.[1]

## ANALYSIS

The administrative judge did not correctly construe the charge of Unauthorized Possession of Equipment, but the charge is nonetheless supported by preponderant evidence.

¶6    Under the first charge, the proposal notice sets forth the following specification:

> Specification:    On or around November 23, 2009, Beretta Corporation issued to the U.S. Department of Labor, Office of Inspector General a Super Nova Tac/GR, PG weapon (also called the Benelli pump action 12 gauge shotgun or Benelli shotgun), a collapsible Supernova Stock, and a Benelli Nova Entry Barrel. Following your transfer from the Department of Labor to the Department of Commerce on September 12, 2010, you wrongfully took and maintained possession of these items without authorization.

IAF, Tab 5 at 270.  The specification is followed by a more detailed narrative:

> In November 2009, you obtained the Benelli shotgun by notifying Beretta that you were a firearms instructor for DOL OIG.  Indeed, the shotgun is restricted to law enforcement use only, and thus, you could not have obtained it in your personal capacity.  The invoice for the shotgun and its accessories, totaling approximately $744, states that Beretta issued them expressly to DOL OIG.  The Bureau of Alcohol, Tobacco, Firearms and Explosives would have had to approve any transfer of ownership of the weapon, which [approval] did not occur.  Thus, it is indisputable that such items did not belong to you and that Beretta did not provide them to you in a personal capacity.  To my knowledge, moreover, no one at DOL OIG or

---

[1] The appellant has since filed a supplemental pleading, in which he requests leave to apprise the Board of the recent decision by the U.S. Court of Appeals for the Federal Circuit in *Parkinson v. Department of Justice*, 815 F.3d 757 (Fed. Cir. 2016).  PFR File, Tab 5.  The appellant's request is granted.

> Beretta authorized you to maintain possession of the Benelli shotgun after leaving DOL OIG. Accordingly, upon your transfer to the Department of Commerce in September 2010, you had an obligation to return all such items to DOL OIG. Instead, you took and maintained personal possession of these items for almost three years after your departure from DOL OIG, until August 8, 2013, when Supervisory Special Agent [S.F.] retrieved the items from you. I find, therefore, that you wrongfully engaged in the unauthorized possession of equipment.

*Id*. at 270-71.

¶7 The Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency; the Board may not substitute what it considers to be a more adequate or proper basis. *Gottlieb v. Veterans Administration*, [39 M.S.P.R. 606](), 609 (1989). Here, the gravamen of the charge is that the appellant improperly kept possession of the Benelli shotgun following his transfer to the agency without the authorization of DOL OIG, his former employer. However, the administrative judge appears to have sustained the charge based on a finding that the appellant failed to obtain authorization from the *agency* to keep possession of the Benelli shotgun following his transfer from DOL OIG. ID at 10. We agree with the appellant that this was error.

¶8 Nonetheless, the charge as written is supported by a preponderance of the evidence. There is no dispute that, while the appellant was employed at DOL OIG, he contacted Beretta to request a Benelli shotgun and an additional 14-inch entry barrel for "testing and evaluation" purposes. PFR File, Tab 1 at 6. The parties disagree as to whether the appellant obtained authorization from a supervisor at DOL OIG to obtain the equipment. Regardless, it is undisputed that the appellant took possession of the Benelli shotgun and entry barrel after the items were delivered to DOL OIG and that he continued to keep the equipment in his home after he left DOL OIG and commenced working for the agency. *Id*. The parties also agree that the appellant did not obtain authorization from DOL

OIG or Beretta to maintain possession of the equipment following his transfer to the agency. *Id.*

¶9        The appellant argues that it was unnecessary to obtain authorization from DOL OIG to maintain possession of the equipment because he borrowed it directly from Beretta, and DOL OIG therefore had no possessory interest. PFR File, Tab 1. In support of his theory, he notes that DOL OIG did not acquire ownership of the Benelli shotgun by way of gift or purchase and that it was never entered into the DOL OIG inventory. The agency does not dispute that the equipment was merely on loan from Beretta and that it never became the property of DOL OIG.

¶10       However, the record reflects that Beretta did not lend the equipment to the appellant in his personal capacity, but rather to DOL OIG. In his oral reply to the proposed removal, the appellant admitted that, when he contacted Beretta's law enforcement representative to request the Benelli shotgun, he identified himself as a firearms instructor for DOL OIG and indicated that he was requesting the weapon for the purpose of testing and evaluation for potential acquisition by DOL OIG. IAF, Tab 6 at 223-29. Furthermore, while there is no contemporaneous paper record of the 2009 transaction, the record contains a reprinted invoice[2] and a printout from Beretta's item tracking system, both of which indicate that the Benelli shotgun and entry barrel were "sold"[3] and shipped to DOL OIG for "testing and evaluation purposes." *Id.* at 50-51. The reprinted invoice also indicates that Beretta had designated the Benelli shotgun as "[law enforcement] only." *Id.* The appellant argues that the "law enforcement only" designation is

---

[2] The invoice bears the date September 30, 2013, which is presumably when it was printed or retrieved from Beretta's record keeping system. We are not persuaded by the appellant's speculation that, for reasons left unexplained, Beretta simply fabricated the document.

[3] It is undisputed that Beretta did not request or receive payment.

not a legal distinction, PFR File, Tab 1 at 14-17, but this is not in dispute, at least regarding the shotgun itself. The fact that Beretta deemed the Benelli shotgun as being for "law enforcement only" is significant not because it reflects a legal designation, but rather because it serves as evidence that Beretta would not have loaned the equipment to the appellant in his personal capacity.

¶11     In sum, regardless of whether the appellant obtained permission from DOL OIG to borrow the shotgun on its behalf, or made his supervisors aware that he had done so, DOL OIG and Beretta were the parties to the transaction. Hence, upon his departure from DOL OIG, the appellant should have either surrendered the equipment to DOL OIG or Beretta, or obtained permission from DOL OIG, and presumably Beretta as well, to maintain possession. Accordingly, we sustain the charge of Unauthorized Possession of Equipment.

The administrative judge correctly sustained specification 2 of the second charge, but not specification 3.

¶12     Under specification 2 of the charge of Conduct Unbecoming a Law Enforcement Officer, the agency alleged the following:

> Specification 2: On March 1, 2013, you improperly carried a firearm in a government-owned vehicle that was not authorized by OEE.
>
> Per the SAM [Special Agent Manual] Section 2-5, "SAs [Special Agents] are not authorized to carry any weapons under their authority as OEE SAs while on duty or pursuant to OEE authorities, other than those specifically authorized by this Section (e.g., batons, pistols, shotguns, rifles and carbines)." Section 2-7 states, further, "All OEE SAs who are authorized to carry firearms shall only carry weapons authorized by OEE." On March 1, 2013, you had a car accident in your assigned GOV. You admitted that, at that time, you were carrying a personally-owned Mossberg Shotgun, which OEE had not authorized. As you were carrying this weapon in your assigned GOV, you were carrying it under the color of your authority as an OEE Special Agent. I find, therefore, that you engaged in conduct unbecoming a law enforcement officer.

IAF, Tab 5 at 271.

¶13    The appellant does not dispute that he was carrying an unauthorized personally-owned Mossberg shotgun in the trunk of his assigned GOV at the time of the March 1, 2013 accident.  PFR File, Tab 1 at 18.  Rather, he argues that he did not violate Sections 2-5 and 2-7 of the SAM because he was not carrying the Mossberg shotgun under his authority as an OEE Special Agent.  *Id.*  However, it is undisputed that the appellant was in an "on duty" status while traveling home in his assigned GOV.  Hearing Compact Disc (HCD), Track 1 (testimony of C.V.).  Furthermore, the record reflects that OEE agents are not permitted to carry personally-owned long guns while on duty and that the appellant had previously been counseled on that very issue.  IAF, Tab 6 (P.K. interview).  The appellant does not allege that he sought or obtained approval to deviate from that policy.  Accordingly, we agree with the administrative judge that the agency proved specification 2 of the conduct unbecoming charge by a preponderance of the evidence.

¶14    We reach a different conclusion concerning specification 3.  The agency set forth that specification as follows:

> Specification 3:  On March 1, 2013, you improperly stored a firearm in an unoccupied government-owned vehicle.
>
> The SAM, Section 2-9, instructs SAs regarding the proper storage of firearms. As it instructs, "Firearms will not be left unsecured in unoccupied vehicles."  As it instructs further, "When no other option is viable, and firearms must be stored in a vehicle, the firearm will be secured by being placed in the trunk and hidden out of site [sic]. This option should be used only as a last resort, when no other means of authorized storage are available."  Nevertheless, in the evening of March 1, 2013, you left your GOV unoccupied on a local street with the Mossberg Shotgun in the trunk.  Given that BIS never even authorized you to use the Mossberg Shotgun in your official capacity and you, by your own account, left your vehicle unattended to watch a movie, I have no basis to believe that "no other option [was] viable" and that such firearm "[had to be] stored in a vehicle." Accordingly, I find that you engaged in conduct unbecoming a law enforcement officer.

IAF, Tab 5 at 271.

¶15    The specification is explicitly based on the appellant's alleged violation of SAM, Section 2-9. However, the first paragraph of Section 2-9 unambiguously delimits the policy to the storage of "authorized" firearms:

> 2-9 WEAPON STORAGE
>
> A. SAs are responsible for taking all reasonable steps to prevent the unauthorized use, accidental discharge, and/or theft of *authorized* firearms. The SA is responsible for the storage of his/her *authorized* firearm in every circumstance. All *authorized* firearms shall be stored in accordance with the following [provisions]. . . .

IAF, Tab 7 at 86 (emphasis added). Regardless of the spirit in which it was intended, Section 2-9 cannot reasonably be read to cover the storage of an unauthorized firearm, such as the appellant's Mossberg shotgun. The appellant may well have engaged in misconduct by failing to store his unauthorized Mossberg shotgun with the same care mandated for authorized firearms. However, as previously discussed, the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency and may not substitute what it considers to be a more adequate or proper basis. *Gottlieb*, 39 M.S.P.R. at 609. Accordingly, we do not sustain specification 3. Nonetheless, the sustained specifications, i.e., specifications 1 and 2, are sufficient to sustain the second charge. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990).

The administrative judge did not fully analyze the Lack of Candor charge.

¶16    In *Ludlum v. Department of Justice*, 278 F.3d 1280 (Fed. Cir. 2002), our reviewing court explained that lack of candor and falsification are distinct charges. While falsification "involves an affirmative misrepresentation, and requires intent to deceive," lack of candor, by contrast, "is a broader and more flexible concept whose contours and elements depend on the particular context and conduct involved." *Id*. at 1284. Lack of candor need not involve an affirmative misrepresentation, but "may involve a failure to disclose something

that, in the circumstances, should have been disclosed to make the statement accurate and complete." *Id*. Unlike falsification, lack of candor does not require "intent to deceive." *Id*. at 1284-85.

¶17 Nonetheless, lack of candor "necessarily involves an element of deception." *Id*. at 1284; *see Parkinson v. Department of Justice*, 815 F.3d 757, 766 (Fed. Cir. 2016); *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶ 11 (2012), *overruled in part on other grounds by Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015). In *Rhee*, 117 M.S.P.R. 640, a case in which the appellant was charged with lack of candor in making an incorrect statement to her supervisor, *id.*, ¶ 2, we found that, to establish the "element of deception," the agency had to prove that the appellant *knowingly* made an incorrect statement, *id.*, ¶ 11. Because the agency failed to establish by preponderant evidence that the appellant knew her statement was false, we found the administrative judge was correct in not sustaining the charge. *Id*., ¶¶ 12-16. Our reviewing court recently took a similar approach in *Parkinson*, in which an employee of the Federal Bureau of Investigation (FBI) was charged with lack of candor under the FBI Offense Code based on his alleged "failure to be fully forthright" in his statements to agency investigators. In that context, the court found that the "element of deception" required under *Ludlum* entailed that the employee must have "knowingly" failed to be forthright. *Parkinson*, 815 F. 3d at 766-67. The court reversed the Board's decision to sustain the charge, finding that, even if the employee failed to be fully forthright, there was no substantial evidence that he did so knowingly. *Id*. at 767-68. In light of *Rhee* and *Parkinson*, we now hold that lack of candor requires proof of the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that he did so knowingly.

¶18      Here, the administrative judge determined that the appellant's statements described in specifications 4, 5, and 6 were not true.  ID at 22-28.[4]  However, he made no findings as to whether the "element of deception" was present, i.e., whether the appellant knowingly gave incorrect or incomplete information.  That matter is in dispute, and the administrative judge did not make the credibility determinations needed to resolve it.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (finding that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).  Because credibility determinations should be made in the first instance by the administrative judge who conducted the hearing, we remand the appeal.  *See Gardner v. U.S. Postal Service*, 79 M.S.P.R. 9, 15 (1998).  On remand, the administrative judge should reanalyze the lack of candor charge in light of

---

[4] The specifications read as follows:

> Specification 4:  In a sworn interview on December 6, 2013, when asked why you did not return the [Benelli shotgun], you stated, "I intended to."  In the same interview, when asked what your purpose was for keeping the Benelli shotgun after leaving DOL OIG, you stated, "My intent was to T&E [test and evaluate] it and present the package to BIS."
>
> Specification 5:  In a sworn interview on December 6, 2013, you stated that you received permission from [R.P.], Special Agent in Charge, OIG, DOL, to acquire and test the [Benelli shotgun].  However, [R.P.] did not give you permission to obtain a shotgun.
>
> Specification 6:  In a sworn interview on December 6, 2013, you stated that you felt the [Benelli shotgun] was a "personal assignment, not a—assigned to an agency."

IAF, Tab 6 at 273-74.

*Parkinson* and *Rhee* and make a new finding as to whether the sustained misconduct warrants removal.[5]

ORDER

¶19    We remand the appeal to the regional office for further adjudication consistent with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

---

[5] In his prehearing submissions, the appellant alleged that the agency violated his right to due process.  IAF, Tab 15 at 15.  In his summary of the prehearing conference, the administrative judge noted the appellant's due process claim and set forth the legal standard for proving such an allegation.  IAF, Tab 17 at 2-3.  However, the administrative judge did not address the due process claim in the initial decision.  Although the appellant has not raised the due process claim on review, there is nothing in the record to indicate that he abandoned or withdrew that claim prior to the initial decision.  Therefore, the administrative judge should have addressed that claim in the initial decision.  *See Hall v. Department of Transportation*, 119 M.S.P.R. 180, ¶ 6 (2013).  On remand, if the appellant indicates that he no longer wishes to pursue his due process claim, the administrative judge should document the appellant's withdrawal of that claim, explain that the Board will no longer consider it when deciding the appeal, and give the appellant an opportunity to object to withdrawal of the affirmative defense.  *See Wynn v. U.S. Postal Service*, 115 M.S.P.R. 146, ¶ 10 (2010).  Otherwise, the administrative judge should address the due process claim in the remand initial decision.  *See Hall*, 119 M.S.P.R. 180, ¶ 7.