**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 20**

Docket No. SF-0752-15-0741-I-1

**Henry A. O'Lague,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

May 11, 2016

Michael B. Love, Esquire, Spokane, Washington, for the appellant.

Mandeev Singh Brar, Portland, Oregon, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1    The appellant has filed a petition for review of the initial decision that sustained the agency's removal action. For the reasons set forth below, we AFFIRM the initial decision as MODIFIED by this Opinion and Order to find that the agency did not prove the charge of lack of candor. The removal action is still SUSTAINED.

BACKGROUND

¶2    Prior to his removal, the appellant was a Police Officer, GS-0083, at the Department of Veterans Affairs (VA) Medical Center (Medical Center), in Spokane, Washington. Initial Appeal File (IAF), Tab 5 at 99. On June 8, 2015,

the agency proposed to remove the appellant on charges of: (1) Inappropriate Behavior (eight specifications); (2) Sleeping on Duty (three specifications); and (3) Lack of Candor. *Id*. at 32-34. The appellant responded orally and in writing, and, on July 10, 2015, the agency issued a decision letter sustaining the charges and finding that removal was the appropriate penalty. *Id*. at 14-16, 18-30. The appellant was removed effective July 10, 2015. *Id*. at 17.

¶3 The appellant filed a timely appeal. IAF, Tab 1. Following a hearing, the administrative judge issued an initial decision sustaining the removal action. IAF, Tab 14, Initial Decision (ID). The administrative judge sustained all charges and specifications, with the exception of specifications 1, 6, and 8 of the Inappropriate Behavior charge, and found that the agency established a nexus between the sustained misconduct and the efficiency of the service. *Id*. at 3-17. She further found that the appellant failed to establish his affirmative defense of whistleblowing reprisal. *Id*. at 17-25. Finally, she found that the removal penalty was within the bounds of reasonableness. *Id*. at 25-27.

¶4 On petition for review, the appellant challenges the administrative judge's findings on the charges, as well as her penalty analysis. Petition for Review (PFR) File, Tab 1.[1] The agency has filed a response, to which the appellant has replied. PFR File, Tabs 3-4.

## ANALYSIS

The administrative judge correctly sustained the charge of Inappropriate Behavior.

¶5 As noted above, the charge of inappropriate behavior was based on eight specifications, of which the administrative judge sustained specifications 2-5, and 7. IAF, Tab 5 at 32-33; ID at 3-17. With the exception of specification 5,

---

[1] The appellant does not challenge the administrative judge's findings on his whistleblowing reprisal claim, and we discern no error in her finding that the appellant failed to prove that affirmative defense.

the sustained specifications are based on allegations that the appellant made false entries in the VA Police Daily Operations Journal (VAP DOJ). IAF, Tab 5 at 32-33.

¶6    To sustain a falsification charge, the agency must prove by preponderant evidence that the employee knowingly supplied incorrect information and that he did so with the intention of defrauding the agency. *Naekel v. Department of Transportation*, 782 F.2d 975, 977 (Fed. Cir. 1986). The intent element, in turn, requires two distinct showings: (a) that the employee intended to deceive or mislead the agency; and (b) that he intended to defraud the agency for his own private material gain. *Leatherbury v. Department of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008); *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 11-12 (2014). The intent to defraud or mislead the agency may be established by circumstantial evidence and also may be inferred when the misrepresentation is made with a reckless disregard for the truth or with conscious purpose to avoid learning the truth. *Boo*, 122 M.S.P.R. 100, ¶ 10. Whether intent has been proven must be resolved by considering the totality of the circumstances, including the appellant's plausible explanation, if any. *Id.*

¶7    Under specifications 2, 3, and 4, the agency alleged that, on February 4, 2015, the appellant falsely recorded in the VAP DOJ that he conducted vehicle patrols of the premises at 0330, 0358, and 0600 hours, respectively. IAF, Tab 5 at 32; *see id*. at 63, 69. In support of its allegations, the agency relied on the testimony of S.B., one of the other two officers on duty that evening. S.B. explained that he and B.H.-P., the third officer on duty, had the keys for both VA Police vehicles on site and that the appellant, therefore, could not have performed the patrols. Hearing Transcript (HT) at 74-78; *see* IAF, Tab 5 at 67-68. While the appellant denied making false entries in the VAP DOJ, the administrative judge credited the testimony of S.B., based in part on her observation of witness demeanor. ID at 11.

¶8 The appellant contends that the administrative judge failed to consider evidence that officers conduct solo patrols of a very large campus, and would not necessarily know where the other officers on duty are, or whether they had possibly transferred vehicle keys.  PFR File, Tab 1 at 9; *see* HT at 84 (testimony of S.B.), 145-46 (testimony of B.H.-P.); 229-30 (testimony of D.K.).  He further notes that B.H.-P. did not provide specific testimony as to which officers were in possession of the vehicle keys on the night of February 4, 2015.  PFR File, Tab 1 at 9-10.  Hence, the appellant reasons, it is possible that B.H.-P. transferred his vehicle keys to the appellant without S.B.'s knowledge.  However, in the absence of any recollection by the appellant or B.H.-P. that this actually occurred, the appellant's speculation is not sufficient to undermine the agency's case.  *See Strachan v. Department of the Air Force*, 30 M.S.P.R. 501, 502 n.* (1986) (finding that the agency is only required to prove its case by a preponderance of the evidence and need not prove it beyond a reasonable doubt).  The appellant also contends the administrative judge failed to consider his testimony that he and S.B. did not have a positive working relationship.  PFR, Tab 1 at 11; *see* HT at 54-55.  The administrative judge did, however, address the appellant's contention that S.B. was jealous of him, ID at 10, and, in any event, the failure of an administrative judge to mention all of the evidence of record does not mean that she did not consider it in reaching her decision, *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).  In sum, we find the appellant has not provided sufficiently sound reasons to overturn the administrative judge's demeanor-based credibility determination.  *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶9 Under specification 7, the agency alleged that, on February 10, 2015, the appellant falsely recorded in the VAP DOJ that he conducted a vehicle patrol at 0330 hours.  IAF, Tab 5 at 32; *see id.* at 81.  In support of this specification, S.B. testified that he reviewed surveillance video footage, which had a clear view

of the vehicle the appellant would have used to conduct the patrol, and found that the vehicle never moved during the time frame at issue. HT at 79; *see* IAF, Tab 5 at 79-80, 83-84. Again, the administrative judge credited the testimony of S.B. over that of the appellant, based in part on observations of witness demeanor. ID at 10. The appellant notes that witness D.K., who investigated the alleged misconduct, testified that the video was of poor quality and that there were "serious issues" as to whether the appellant had in fact made false entries in the VAP DOJ. PFR File, Tab 1 at 11; *see* HT at 240-41.[2] D.K.'s statements do not, however, amount to an admission that the video evidence was ambiguous, and S.B. expressed no doubts as to what he saw. HT at 79 (testimony of S.B.). The appellant also speculates that the footage, which has been lost or destroyed, "could have exonerated" him. PFR File, Tab 1 at 11. However, as noted above, the agency need only establish its case by a preponderance of the evidence, and we find that the appellant's bare speculation does not provide sufficiently sound reasons for overturning the administrative judge's credibility determination. *See Haebe*, 288 F.3d at 1301. Accordingly, we discern no error in the administrative judge's conclusion that the VAP DOJ entries at issue in specifications 2, 3, 4, and 7 were inaccurate.

¶10 The appellant does not challenge the administrative judge's findings regarding the element of intent, presumably because he denies having made incorrect VAP DOJ entries in the first instance. However, considering the record as a whole, we agree with the administrative judge that, at a minimum, the false entries demonstrated a reckless disregard for the truth. ID at 12. Furthermore, as the administrative judge explained, the appellant obtained a private material gain from his deception, as he was credited with the required twice-nightly patrols

---

[2] D.K. did not use that precise wording, but he agreed with the statement by the appellant's attorney that "there were some real issues with whether [the appellant] actually entered false information." HT at 241.

while saving himself the trouble of actually performing them. *Id.*; *see Boo*, 122 M.S.P.R. 100, ¶ 13 (emphasizing that the definition of "own private material gain" is broad and not limited to monetary gains). We therefore find that the administrative judge correctly sustained specifications 2, 3, 4, and 7.

¶11      In specification 5, the agency alleged that on February 7, 2015, at approximately 0035 hours, B.H.-P. witnessed the appellant leaving the facility grounds in a police vehicle without having informed any other officer that he was leaving the facility grounds. IAF, Tab 5 at 32. B.H.-P. testified to these events at the hearing and in his February 12, 2015 witness statement. HT at 141-42; IAF, Tab 5 at 70-71. He further testified that, while it was permissible to take a police vehicle off the property for certain purposes, e.g., maintenance, it was improper to do so without first notifying a coworker. HT at 141-42. At the hearing, the appellant did not deny leaving the premises at the time in question, but testified that he "suspect[ed]" that he was back in 10 minutes, which was the time it would have taken to go to the gas station, put air in the tires, clean the windows and return. HT at 16. He further testified that he "suspect[ed]" that he verbally informed B.H.-P. that he was leaving. *Id*. However, the appellant did not definitively contradict B.H.-P.'s version of events, or deny that it was improper to take a police vehicle off the facility premises without notifying another officer on duty. Accordingly, we find that the administrative judge properly sustained specification 5, and consequently the charge as a whole. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

The administrative judge correctly sustained the charge of Sleeping on Duty.

¶12      In its second charge, the agency charged the appellant with sleeping on duty on three separate occasions, on February 7, 10, and 11, 2015. IAF, Tab 5 at 33. On review, the appellant does not contest the administrative judge's

finding that the agency proved its allegations, and we discern no error in her analysis. The appellant instead contends that he did not intend to fall asleep, that other officers who had been observed sleeping on the job were not removed, and that the agency failed to show that his sleeping on the job created a safety risk that would warrant removal under the agency's table of penalties. PFR File, Tab 1 at 12-14. These arguments go to the propriety of the removal penalty, which we will address below. *See Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, ¶¶ 10-12 (2013).

The agency did not prove the Lack of Candor charge by preponderant evidence.

¶13     In its third charge, the agency alleged that the appellant displayed a lack of candor during a May 26, 2015 investigative interview concerning allegations that he had behaved inappropriately during a March 1, 2015 traffic stop of another Medical Center employee, A.N. IAF, Tab 5 at 33.[3] As our reviewing court has explained, lack of candor and falsification are distinct charges. *See Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). Whereas falsification "involves an affirmative misrepresentation and requires intent to deceive," lack of candor, by contrast, "is a broader and more flexible concept whose contours and elements depend on the particular context and conduct involved." *Id.* For example, lack of candor need not involve an affirmative misrepresentation, but "may involve a failure to disclose something that, in the circumstances, should have been disclosed to make the statement accurate and complete." *Id.* Furthermore, while lack of candor "necessarily involves an element of deception, 'intent to deceive' is not a separate element of the offense—as it is for falsification." *Id.* at 1284−85. Nevertheless, to constitute

---

[3] The March 1, 2015 incident was the subject of specification 1 of the Inappropriate Behavior charge. IAF, Tab 5 at 32. The administrative judge did not sustain that specification.

lack of candor, a misrepresentation or omission must have been made knowingly. *Parkinson v. Department of Justice*, 815 F.3d 757, 766 (Fed. Cir. 2016); *Fargnoli v. Department of Commerce*, 2016 MSPB 19, ¶¶ 17-18 (applying the standard set forth in *Parkinson*); *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶¶ 10-11 (2012), *overruled in part on other grounds by Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015).

¶14        The following facts are undisputed. The interview was conducted by Police Lieutenant J.L. and Police Sergeant D.K., with a union representative present. IAF, Tab 5 at 60. During the interview, the appellant was handed a written statement by A.N. recounting the traffic stop incident. *Id.*; *see id.* at 57-59. The appellant was unable to read A.N.'s handwriting, and asked J.L. to read the statement out loud. *Id.* at 60; HT at 43 (testimony of the appellant). As J.L. began to read the statement out loud, he misread A.N.'s handwriting, and erroneously stated that the traffic stop took place on March 7, 2015. HT at 31, 43 (testimony of the appellant), 221-22 (testimony of D.K.).[4] The appellant interjected that he could not have made a traffic stop on that date, as he had been relieved of his badge some days before. IAF, Tab 5 at 20, 60. He further stated that he did not know who A.N. was and that, while he might recognize her, he did not know her by name. *Id.* at 60. The interview then ended. *Id.*

¶15        The parties differ on the following crucial detail. The appellant maintains that, during the interview, he correctly informed J.L. and D.K. that he had been relieved of his badge on March 4, 2015, and therefore was not on a shift on March 7, 2015. HT at 31, 43 (testimony of the appellant); IAF, Tab 5 at 20. However, in their memorandum of the interview, J.L. and D.K. relate that the

---

[4] The first sentence of A.N.'s statement reads as follows: "Spokane VA Medical Center, was pulled over after my Saturday night shift, approx. 0035 Sunday morning (03/01/15)." IAF, Tab 5 at 57. The statement is handwritten, such that the "1" could easily be mistaken for a "7."

appellant claimed that he was relieved of duty on February 25, 2015. IAF, Tab 5 at 60. The alleged discrepancy is the basis of the lack of candor charge, which sets out the following specification:

> On 26 May 2015, you were interviewed regarding the [traffic stop incident]. You claimed that you could not have been the one to stop [A.N.] because you were not working that night and had been relieved of your badge and credentials on 25 February 2015. However, your time card shows you having worked that shift and the VAP DOJ shows that you were making entries during that shift. You were not candid and truthful with me [sic][5] during that interview.

IAF, Tab 5 at 33.

¶16    As noted above, a lack of candor charge need not involve an affirmative misrepresentation. *Ludlum*, 278 F.3d at 1284. However, because the agency in this case based its charge on an alleged affirmative misrepresentation, i.e., that he had been relieved of his badge on February 25, 2015, it must prove that the appellant in fact made the statement in question and that he did so knowingly. *See Parkinson*, 815 F.3d at 766; *Prouty v. General Services Administration*, 122 M.S.P.R. 117, ¶ 16 (2014) (holding that the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency; the Board may not substitute what it considers to be a more adequate or proper basis). In sustaining the charge, the administrative judge credited the statement by D.K. and J.K. that the appellant told them he had been relieved of his badge on February 25, 2015. ID at 16. However, because the administrative judge did not in this instance base her credibility determination on observations of witness demeanor, we will reweigh the evidence. *See Haebe*, 288 F.3d at 1302. For the following reasons, we credit the appellant's version of events.

---

[5] It is undisputed that the proposing official was not present at the May 26, 2015 interview.

¶17     First, contrary to what the administrative judge stated in the initial decision, the appellant specifically testified under oath that he informed J.L. and D.K. that he had been relieved of his badge on March 4, 2015.  HT at 31 (testimony of the appellant); *see* IAF, Tab 5 at 20; *contra* ID at 16.  In contrast, while the signed memorandum by J.L. and D.K. is contemporaneous, which tends to weigh in its favor, it is also unsworn, and the agency failed to elicit sworn testimony from either J.L. or D.K. that the appellant gave February 25, 2015, as the date his badge was removed.  HT at 206-50 (testimony of D.K.); IAF, Tab 13 (stipulated testimony of J.L.); *see Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981) (setting forth the factors that affect the weight afforded hearsay evidence, including the availability of persons with first-hand knowledge to testify at the hearing and whether statements of out-of-court declarants are signed and in affidavit form).  The credibility of the memorandum is also compromised by its omission of the fact that J.L. had misstated the date of the incident being investigated.  IAF, Tab 5 at 60.  Given that the appellant had been led to believe that the interview concerned an incident that took place on March 7, 2015—subsequent to March 4, 2015, when his badge was in fact removed—he had no apparent reason to misrepresent that his badge instead was removed on February 25, 2015.  Indeed, it is inherently unlikely that he would have done so, knowing that the agency could have readily verified that he was performing police officer duties on that date.  *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (holding that the inherent improbability of a witness's version of events is among the factors to be considered in making a credibility determination).  Under these circumstances, we credit the appellant's claim that he truthfully informed J.L. and D.K. that his badge was removed on March 4, 2015, and we therefore do not sustain the lack of candor charge.

The removal penalty is sustained.

¶18     Where, as here, not all of the charges are sustained, the Board will consider carefully whether the sustained charges merited the penalty imposed by the

agency. *Downey*, 119 M.S.P.R. 302, ¶ 8. In such a case, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Id*. Here, the agency did not indicate that it desired a lesser penalty if the lack of candor charge was not sustained. In assessing the reasonableness of the penalty, the Board will consider such factors as the nature and seriousness of the offense, the employee's past disciplinary record, the consistency of the penalty with the agency's table of penalties, and the consistency of the penalty with those imposed on others for similar offenses. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

¶19        As to the charge of Sleeping on Duty, the appellant has raised legitimate concerns as to whether removal would be an appropriate penalty for that charge alone. He correctly observes that in *Downey*, a case in which the Board sustained a charge of sleeping on duty, the Board found it appropriate to remand for further findings on penalty issues similar to the ones raised by the appellant here. First, the appellant in *Downey* contended that he did not intend to fall asleep, which the Board found to be a pertinent consideration in assessing the seriousness of the misconduct. *Downey*, 119 M.S.P.R. 302, ¶ 10. Second, as here, the agency's table of penalties allows for removal for a first offense of sleeping on duty only when the "safety of patients, beneficiaries, members, employees, or property may be endangered." *Id*.; *see* IAF, Tab 5 at 37. The Board has held that, under those circumstances, an explicit finding on the issue of whether the appellant endangered the safety of people or property was necessary to determine if the removal penalty was reasonable. *Downey*, 119 M.S.P.R. 302, ¶ 10. Finally, as here, the appellant in *Downey* raised a disparate penalties claim, which also required further analysis on remand. *Id*., ¶¶ 11-14.

¶20        This case differs from *Downey*, however, in that the agency proved not only that the appellant slept on duty, but also that he committed additional

misconduct, including falsifying entries in the VAP DOJ. Falsification is a serious offense that affects an employee's reliability, veracity, trustworthiness, and ethical conduct, and the Board has frequently upheld the penalty of removal for a sustained charge of falsification. *Gebhardt v. Department of the Air Force*, 99 M.S.P.R. 49, ¶ 21 (2005), *aff'd*, 180 F. App'x 951 (Fed. Cir. 2006). The penalty of removal for a first offense of intentional falsification is also consistent with the agency's table of penalties. IAF, Tab 5 at 37. Furthermore, unlike the appellant in *Downey*, the appellant in this case is a law enforcement officer, and it is well settled that law enforcement officers may be held to a higher standard of conduct than other Federal employees. *Hartigan v. Veterans Administration*, 39 M.S.P.R. 613, 619 (1989). While the appellant's lack of prior discipline serves as a mitigating factor, the sustained acts of falsification are nonetheless sufficiently serious to support a removal penalty, regardless of whether the appellant intended to sleep on duty, or whether the "safety of patients, beneficiaries, members, employees, or property" was endangered as a result.

¶21    Finally, as to the appellant's claim of disparate penalties, the Board has held that, to trigger the agency's evidentiary burden on disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and other relevant factors to lead a reasonable person to conclude that the agency treated similarly situated employees differently. *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010). However, the Board does not have hard and fast rules regarding the "outcome determinative" nature of these factors. *Id.*; *see Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012). If the appellant makes the required showing, the agency then must prove a legitimate reason for the difference in treatment by a preponderance of the evidence before the penalty can be upheld. *Boucher*, 118 M.S.P.R. 640, ¶ 20. Here, the record reflects that other police officers were caught sleeping on the job, but received only a verbal or written counseling. HT at 211-12 (testimony of D.K.). However, we find the agency has adequately justified the difference in

treatment on the grounds that those officers also did not commit acts of dishonesty, such as making false entries in the VAP DOJ. *Id*. at 212. In sum, we agree with the administrative judge and find the agency has met its burden of showing that the penalty of removal in this case was not outside the bounds of reasonableness.

## ORDER

¶22    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the

Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.