**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 36**

Docket No. DC-0752-15-0466-I-1

**Nikki A. Gardner,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

October 7, 2016

Laurence A. Elgin, Washington, D.C., for the appellant.

Hansel Cordeiro, Esquire, and Rory Layne, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1 The appellant has filed a petition for review of the initial decision, which affirmed her removal. For the following reasons, we DENY the petition for review. Except as MODIFIED by this Opinion and Order as to the bases for denying the appellant's affirmative defenses, we AFFIRM the initial decision.

## BACKGROUND

¶2 The Department of Veterans Affairs (the agency) appointed the appellant to the position of Contract Specialist, effective March 13, 2011. Initial Appeal File

(IAF), Tab 7 at 131.[1]  It removed her effective July 13, 2014, based on the following charges:  (1) forging and/or using falsified Government documents or records; (2) misuse of position; (3) failure to receive or maintain proper certification for a GS-13 Veterans' Administration (VA) Contract Specialist; (4) failure to follow instructions; and (5) lack of candor.  IAF, Tab 7 at 50, 62-64.

¶3        In charge 1, the agency specified that the appellant, who has no military service, provided falsified documents to Central Michigan University (CMU) on or around March 21, 2014, stating that she was deployed to Iraq from June 2001 through June 2013, for the purpose of obtaining a waiver of her 10‑year delay in receiving her Master of Business Administration (MBA) degree.  IAF, Tab 7 at 62, 68-73, Tab 47 at 63, 68.  The falsified documents included military orders, a memorandum from the Department of the Army's Intelligence and Security Command, and a letter from the agency that listed the appellant's Government‑issued Blackberry telephone number as the number for the lieutenant who was listed as the author.  IAF, Tab 7 at 62, 68-73.  The agency further specified that the appellant was working as a Contract Specialist for the agency during part of the time that she was purportedly deployed in Iraq.  *Id.* at 62.

¶4        In charge 2, the agency alleged that the appellant violated Office of Government of Ethics regulation 5 C.F.R. § 2635.702, when she used her public office for her own gain by sending the agency letter referred to in charge 1 from her Government email address to her personal email address and then to CMU, intending to use it to waive the requirements for her CMU degree.  IAF, Tab 7 at 63.  The agency provided a copy of an email string from the appellant's Government email address to her personal email address, and then, via the

[1] At the time of her appointment, the appellant was a Federal employee with the Defense Human Resources Activity.  IAF, Tab 1 at 131, 133.

appellant's personal iPhone, to CMU. *Id.* at 69-70. In the text of her email, the appellant referred CMU to the attached "letter . . . based on [her] Military Orders." *Id.* at 69.

¶5    In charge 3, the agency specified that the appellant's position required her to receive and maintain a Level III Federal Acquisition Certification in Contracting (FAC-C) within 12 months of her appointment to her Contract Specialist position in March 2011, and that she failed to receive the required certification. *Id*. at 63, 131. In charge 4, the agency specified that the appellant failed to follow instructions to complete and receive her Level III FAC-C by June 2, 2014, and to inform the proposing official by May 6, 2014, whether she was eligible to retake the test for a training course that she failed. *Id*. at 63.

¶6    In charge 5, the agency specified that the appellant displayed a lack of candor when on February 4, 2014, she submitted to the agency in support of her application for a Level III FAC-C a falsified June 2012 certificate of completion from Management Concepts. *Id.* at 64. The certificate indicated that she completed 24 credit hours in "Appropriation Law." *Id*. According to an email from Management Concepts to the agency, the only course that it offered in 2012 related to appropriations law was an "Appropriations Law Seminar." *Id.* at 77. The agency further specified that the appellant's résumé falsely stated that she earned an MBA from CMU in January 2003. *Id*.

¶7    After the appellant responded in writing to the proposal notice, the agency issued a decision letter sustaining the charges and removing her effective July 13, 2014. *Id*. at 50-61. The appellant filed this appeal, disputing the charges and raising affirmative defenses of discrimination based on race, sex, and disability, and of retaliation for her protected equal employment opportunity (EEO) activity. IAF, Tab 1, Tab 46 at 4‑10. After holding a hearing, the administrative judge sustained the charges and found that the appellant failed to prove her affirmative defenses. IAF, Tab 61, Initial Decision (ID) at 15, 17, 19, 23, 26‑27, 30, 32. The administrative judge also found that the agency proved a

nexus between the appellant's misconduct and the efficiency of service and that the removal penalty was reasonable.  ID at 33, 35.

¶8        The appellant has filed a petition for review challenging the administrative judge's findings regarding charges 1, 2, and 5.  Petition for Review (PFR) File, Tab 1 at 6‑12, 16‑17.  She reasserts the affirmative defenses she raised on appeal.  *Id*. at 12-16.  The agency has responded in opposition to her petition, and the appellant has replied.  PFR File, Tabs 3-4.

## ANALYSIS

### The administrative judge properly found that the agency proved the charges.

¶9        The appellant does not challenge the administrative judge's findings that the agency proved that she failed to receive or maintain the Level III FAC-C required for her position and that she failed to follow instructions as alleged in charges 3 and 4.  PFR File, Tab 1.  She also does not challenge the administrative judge's findings that the agency proved the nexus and the reasonableness of the penalty.  *Id.*  We discern no reason to disturb those findings.  She does, however, dispute the remaining charges.

*Charges 1 and 2: Falsification and Misuse of Position*

¶10       Regarding charge 1, the administrative judge found that the agency proved that the appellant used falsified Government documents.  ID at 10-15.  She also found, regarding charge 2, that the agency proved that the appellant misused her position. ID at 15.  We agree.

¶11       Generally, an agency is required to prove its charges in an adverse action appeal by preponderant evidence.  5 U.S.C. § 7701(c)(1)(B).  To establish a charge of misrepresentation, falsification, or lying, an agency must prove that the appellant:  (1) supplied wrong information; and (2) knowingly did so with the intention of defrauding, deceiving, or misleading the agency for her own private material gain.  *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 10‑12 (2014) (citing *Leatherbury v. Department of the Army*, 524 F.3d 1293,

1300 (Fed. Cir. 2008) (explaining that an agency must prove both that the employee intended "to deceive or mislead the agency" and that such deception was for "private material gain")). Similarly, the agency was required to prove its misuse of position charge by demonstrating that, as alleged, the appellant misused her public office for private gain. IAF, Tab 7 at 63; *see Mann v. Department of Health & Human Services*, 78 M.S.P.R. 1, 8 (1998) (providing that a charge of using one's public office for private gain cannot be sustained when no private gain has been shown); 5 C.F.R. § 2635.702 (prohibiting the use of public office for an employee's own private gain).

¶12    The administrative judge found that the appellant intended to defraud, deceive, or mislead the agency for her own private material gain by submitting false documents to CMU to obtain a waiver of the requirement that she apply for her MBA within 7 years of completing her coursework. ID at 6, 14‑15. In reaching her decision, the administrative judge credited the testimony of CMU's Commencement Coordinator that the appellant telephoned her on March 21, 2014, concerning the classes that she took in 2003 and 2004. ID at 6; Hearing Compact Disc (HCD) (testimony of K.P.-J.). The appellant's credit for these classes had expired when she failed to apply for her master's degree within 7 years of completing her coursework. ID at 6; HCD (testimony of K.P.-J.). The Commencement Coordinator testified that the appellant explained that she had not applied for the degree because she was deployed in Iraq. ID at 6; HCD (testimony of K.P.-J.). She also testified that the appellant sent military documents to CMU via facsimile that appeared to be forged and that the appellant sent a confirmation email reiterating her request for her MBA. ID at 6‑7; HCD (testimony of K.P.-J.).

¶13    CMU's Director of Infrastructure and Security testified that he conducted a reverse look-up on the facsimile in question and discovered that it was sent from a beauty salon located in the same town as the appellant's residence. ID at 8;

IAF, Tab 1 at 4; HCD (testimony of E.L.). He testified that, although the header on the facsimile had been changed to reflect that it originated from a different number, it is possible to make this type of change with some technical knowledge. HCD (testimony of E.L.); IAF, Tab 7 at 71-72.

¶14 The administrative judge also found that the agency proved that the appellant misused her position as alleged in charge 2. ID at 15. The documentary evidence included a March 21, 2014 email chain that the appellant sent from her Government address to her personal address and then to the CMU Commencement Coordinator. *Id.*; IAF, Tab 7 at 69‑70. Attached to the email was the agency letter referenced in charge 1. ID at 15; IAF, Tab 7 at 69-73. This evidence was corroborated by CMU's Director of Infrastructure and Security, who testified that he accessed the backup server for CMU and recovered an email with an attachment that the appellant sent to CMU. ID at 8; IAF, Tab 47 at 60‑61; HCD (testimony of E.L.).

¶15 The appellant argues that the administrative judge erred in crediting the testimony of CMU's Commencement Coordinator. PFR File, Tab 1 at 16-17. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge found that the Commencement Coordinator was an "extremely credible" witness who had no prior relationship with the appellant, and thus had no reason to lie. ID at 14. The administrative judge further found that she testified clearly and directly. *Id.*; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (discussing the relevant factors in making credibility determinations, including the witness's demeanor and any bias or lack thereof).

¶16        For the first time on review, the appellant alleges that the Commencement Coordinator is not credible because she required the appellant to justify her request for a waiver of the requirement to apply for her degree within 7 years, but she was able ultimately to obtain her MBA through a different CMU official by simply filling out a form. PFR File, Tab 1 at 16; IAF, Tab 47 at 66‑85. We do not agree that this alleged discrepancy in the procedures required by different officials at CMU calls the credibility of the Commencement Coordinator into question. PFR File, Tab 1 at 16‑17. In any event, the appellant did not raise this argument below and has not explained her failure to do so. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (observing that, generally, the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

¶17        On review, the appellant also suggests that, for a variety of reasons, she could not and did not send the March 21, 2014 email to CMU. For example, she states that she was prevented from presenting evidence that she was at home on medical leave on March 21, and was unable to access the internet both because she was experiencing connectivity problems and was "in a prescribed therapy session for her . . . sleep apnea." PFR File, Tab 1 at 10. She also produces her March to April 2014 iPhone bill and the sworn statement of a digital forensics expert as evidence that she did not send the March 21 email from her personal iPhone. PFR File, Tab 1 at 6‑7, 22-23, Tab 4 at 12-14. According to the appellant, the Board should reopen her case and grant her full discovery because the agency engaged in fraud by representing that she sent the March 21 email even though she had provided the agency's representative with this iPhone bill during discovery. PFR File, Tab 1 at 7-12.

¶18        We are not persuaded by these arguments. First, as to the appellant's claim that she was not allowed to present evidence of her activities on March 21, the

administrative judge ruled below that the appellant could not call any witnesses other than herself, and could not present any new documentary evidence, because she did not submit any prehearing submissions. IAF, Tab 46 at 11 & n.5. We find that the appellant's ability to submit evidence on appeal was limited only by her own inaction and not by any error of the administrative judge. *See Stewart‑Maxwell v. U.S. Postal Service*, 56 M.S.P.R. 265, 270 (1993) (finding that the administrative judge did not abuse her wide discretion to control the proceedings before her by denying a witness requested by the appellant after the deadline for filing prehearing submissions).

¶19      Second, we find that the appellant has not explained why we should consider her new evidence and argument on review that her iPhone was "invaded by an intruder" to send the email and attached documents to CMU. PFR File, Tab 1 at 6-7. To substantiate her claim, the appellant submits the iPhone bill and expert statement referenced above. PFR File, Tab 1 at 19-23, Tab 4 at 12‑14. The cellphone bill predates the initial decision, and the appellant has not explained why she failed to submit it below. PFR File, Tab 1 at 19-23; *see Banks*, 4 M.S.P.R. at 271. Even if we were to consider the bill, it provides no information regarding the appellant's email activity and therefore is not a basis to grant the petition for review. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (finding that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision). We find that, because the bill does not provide any information regarding her email activity, the agency did not engage in fraud when it represented that she sent the March 21 email despite the fact that it had a copy of the bill. PFR File, Tab 1 at 19-23. Therefore, we decline to reopen discovery to address this alleged fraud. *Id.* at 7-12.

¶20      Finally, we are unpersuaded that the expert report the appellant submits for the first time on review provides a basis for granting her petition. PFR File,

Tab 1 at 6‑7, Tab 4 at 12‑14. The appellant filed her expert's statement on April 25, 2016, more than 1 year after she filed her appeal, and 2 months after the initial decision was issued. PFR File, Tab 4 at 12‑14; IAF, Tab 1; ID. The expert stated that he could not begin his examination until 10 days before he completed his statement because the appellant's iPhone was not functional, and he first had to order parts and fix it. PFR File, Tab 4 at 12-13. However, the expert does not state when he received the broken iPhone from the appellant. Although the appellant claims that the evidence she submits on review is new, she has not shown that it previously was unavailable despite her due diligence. Thus, we will not consider it.[2] *See Banks*, 4 M.S.P.R. at 271.

¶21 The appellant raises other arguments on review that challenge the administrative judge's well-reasoned factual findings. As one example, she argues that the administrative judge erred in finding that she sent a falsified document to CMU via facsimile. PFR File, Tab 1 at 11. According to the appellant, she lacks the technical expertise necessary to change the header on the facsimile, as was done in this instance. *Id.* As another example, she alleges that, as an agency employee, she would have used real agency letterhead if she were to falsify an agency letter, rather than the "fake letterhead" used here. *Id.* She provides no evidence to substantiate her claims, and we are not persuaded by these arguments.

*Charge 5: Lack of Candor*

¶22 The administrative judge found that the appellant lacked candor when she represented to the agency that (1) she took an "Appropriation Law" course through Management Concepts in June 2012 and submitted a false certificate to

---

[2] Regardless, the digital forensic expert merely states that he found no record of the email or documents at issue on the appellant's iPhone. PFR File, Tab 4 at 12-14. He does not opine that the appellant's iPhone was used by a third party. *Id.*

her agency to support this claim, and (2) she received her MBA from CMU in 2003. ID at 19‑23. We affirm these findings.

¶23 Lack of candor "is a broader and more flexible concept" than falsification. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). However, although lack of candor does not require an "affirmative misrepresentation," it "necessarily involves an element of deception." *Id.* at 1284‑85. An agency alleging lack of candor must prove the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that she did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016).

¶24 The appellant does not dispute the administrative judge's finding that she lacked candor when she represented on her résumé that she received her MBA in 2003, and we decline to disturb that finding. ID at 22‑23; IAF, Tab 7 at 64, 138, Tab 41 at 11. However, she asserts that the administrative judge erred in sustaining the other specification of the charge, reasserting her claim that she attended the Management Concepts course. PFR File, Tab 1 at 12. In sustaining this specification, the administrative judge considered the testimony of the Chief Executive Officer (CEO) of Management Concepts that the appellant's name was not on the attendance list for its 2012 "Appropriations Law Seminar," and that the instructor who allegedly signed the appellant's certificate was not a company employee. ID at 19-20; HCD (testimony of T.D.); IAF, Tab 7 at 117, 119, Tab 41 at 30‑31. The administrative judge also considered that the certificate that the appellant submitted to the agency did not resemble an ordinary Management Concepts certificate. ID at 19, 22; HCD (testimony of T.D.); *compare* IAF, Tab 7 at 119 (the certificate submitted by the appellant to the agency), *with* IAF, Tab 47 at 17 (an example of an ordinary Management Concepts certificate). The administrative judge found it more likely than not that the appellant submitted a

false certificate from Management Concepts as part of her Level III FAC-C application as charged. ID at 22.

¶25 The appellant argues, first, that the administrative judge ignored the "pages and pages of the instruction book on appropriations law" that she produced to prove that she took the course. PFR File, Tab 1 at 12. The appellant does not identify these documents in the record. However, to the extent that she seeks to rely on documents submitted after the deadline for prehearing submissions, we find that the administrative judge did not err in declining to consider them. *Supra* ¶ 18; IAF, Tab 51 at 7‑27. To the extent the appellant is referring to documents elsewhere in the record, we find that the administrative judge's failure to mention them in the initial decision does not mean she did not consider them and, in any event, is not a basis to overturn her well-reasoned findings. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

¶26 The appellant next argues "that she should be allowed to go into full discovery" regarding her attendance at the Management Concepts course. PFR File, Tab 1 at 12. However, we find that the appellant fully utilized the Board's discovery procedures on appeal and there is no evidence that she filed a motion to compel below. IAF, Tabs 9-10, 13-14, 17-19, 20‑22, 31, 33-35, 38-39. Therefore, she is precluded from raising this issue on review. *See Szejner v. Office of Personnel Management*, 99 M.S.P.R. 275, ¶ 5 (2005) (finding that an appellant's failure to file a motion to compel below precludes him from raising a discovery dispute for the first time on petition for review), *aff'd*, 167 F. App'x 217 (Fed. Cir. 2006).

The administrative judge properly denied the appellant's affirmative defenses.

¶27 On review, the appellant also reiterates her affirmative defenses that the agency discriminated against her based on race and sex, denied her reasonable

accommodation for her disability, and retaliated against her for her EEO activity.[3] PFR File, Tab 1 at 12-16.

¶28    In denying the appellant's race and sex discrimination and EEO reprisal affirmative defenses, the administrative judge applied the evidentiary standards set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 42-43, 51 (2015); ID at 27‑32.  In *Savage*, we stated that, when an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action.  *Savage*, 122 M.S.P.R. 612, ¶ 51.  We further stated that, in making her initial showing, an appellant may rely on direct evidence or any of the three types of circumstantial evidence described in *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir. 1994), i.e., pretext, comparator or "convincing mosaic," either alone or in combination.  *Savage*, 122 M.S.P.R. 612, ¶ 51.  *Savage* overruled prior Board decisions, however, to the extent that they erroneously held that, to establish such a claim using circumstantial evidence, an appellant *must* provide evidence showing a "convincing mosaic" of discrimination or retaliation against her.  *Id.*, ¶¶ 42-43, 51.

¶29    Recently, the U.S. Court of Appeals for the Seventh Circuit further clarified its explanation in *Troupe* that the phrase "convincing mosaic" was not meant to impose a new, separate legal requirement or to serve as a legal test, but was instead "designed as a metaphor to illustrate why courts should not try to differentiate between direct and indirect evidence."  *Ortiz v. Werner Enterprises, Inc.*, No. 15-2574, 2016 WL 4411434, at *3 (7th Cir. Aug. 19, 2016).  Noting that

---

[3] The appellant has not challenged the administrative judge's findings that she failed to present any evidence of a hostile work environment based on race or sex, and failed to prove her claim of disparate treatment based on disability.  ID at 26-27, 30.  We decline to disturb these findings on review.

the phrase "convincing mosaic" continued to be misused as a governing legal standard in cases decided after *Troupe*, *Ortiz* again rejected the proposition that "evidence must be sorted into different piles, labeled 'direct' and 'indirect,' that are evaluated differently," instead holding that "all evidence belongs in a single pile and must be evaluated as a whole." *Id.* at *5.

¶30 After considering the decision in *Ortiz*, we find that, regardless of the characterization of the evidence, the administrative judge properly found that the appellant failed to meet her burden to prove that discrimination based on race or sex, or retaliation based on prior EEO activity, was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 613, ¶¶ 49-51. Furthermore, in light of *Ortiz*, we clarify that *Savage* does not require administrative judges to separate "direct" from "indirect" evidence and to proceed as if such evidence were subject to different legal standards, or to require appellants to demonstrate a "convincing mosaic" of discrimination or retaliation. *See Ortiz*, No. 15-2574, 2016 WL 4411434, at *4. Instead, as we stated in *Savage*, the dispositive inquiry is whether the appellant has shown by the preponderance of the evidence[4] that the prohibited consideration was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 613, ¶ 51.

¶31 The administrative judge properly considered the evidence as whole in finding that the appellant failed to prove her affirmative defenses. Although the administrative judge discussed the distinction between direct and indirect evidence, she did not disregard any evidence because it was not direct or indirect or treat the phrase convincing mosaic as a legal requirement. She thoroughly considered the documentary evidence and the witnesses' testimony as a whole

---

[4] The Board's regulations define "preponderance of the evidence" as "the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q).

and found no evidence that prohibited discrimination or retaliation was a motivating factor in the appellant's removal. ID at 30-32.

¶32      We find that the appellant's conclusory arguments on review express her mere disagreement with the administrative judge's weighing of the evidence. For example, she argues on review that race discrimination can be inferred from the fact that she could not complete the training at issue in charge 4 due to a trip to Africa, and from her supervisor telling her to "talk to the hand." PFR File, Tab 1 at 15‑16; IAF, Tab 7 at 63. The administrative judge considered the appellant's testimony on these points, but found that the alleged behavior did not provide a basis for inferring discriminatory or retaliatory intent. ID at 31-32. The administrative judge found no evidence to support the appellant's claim that her supervisor favored white men and treated African-American women poorly. ID at 30, 32. We further observe that the investigation into the appellant's submission of falsified documents to CMU was initiated when the proposing official was contacted by the Department of the Army's Criminal Intelligence Division (CID). IAF, Tab 7 at 62; ID at 13. The appellant has not alleged, and we have no reason to believe, that discriminatory or retaliatory animus caused the CID to contact the agency.

¶33      The appellant also reasserts her affirmative defense of retaliation for EEO activity. PFR File, Tab 1 at 15‑16. Specifically, she argues that she made a prima facie case of retaliation based on a close proximity in time between the EEO complaint she filed on April 14, 2014, and her June 10, 2014 proposed removal. *Id.*; HCD (testimony of the appellant); IAF, Tab 7 at 62-65.

¶34      The administrative judge considered the appellant's testimony alleging that her supervisor knew about the EEO complaint, but found this evidence was insufficient to prove her claim in light of the specificity provided by the

supervisor in the proposal notice.[5]  ID at 31‑32.  We decline to reweigh this evidence on review.  *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (observing that mere reargument of factual issues already raised and properly resolved by the administrative judge below do not establish a basis for review).

¶35      Finally, the appellant reasserts her claim that the agency failed to provide a reasonable accommodation for her disability.  PFR File, Tab 1 at 12‑13.  An appellant may establish a disability discrimination claim based on failure to accommodate by showing that:   (1) she is a disabled person; (2) the action appealed was based on her disability; and (3), to the extent possible, that there was a reasonable accommodation under which the appellant believes she could perform the essential duties of her position or of a vacant position to which she could be reassigned.  *Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 18 (2013).  The administrative judge denied this claim because she found, in pertinent part, that the appellant failed to prove that she requested an accommodation, or even that her supervisor was aware of her medical condition of sleep apnea.  ID at 26.  In doing so, the administrative judge found the appellant's testimony that her supervisor knew of her disability from her personnel folder to be less than credible.  ID at 25.  Although the appellant disputes the finding that her supervisor did not know about her sleep apnea, she has failed to provide a basis to overturn the administrative judge's

---

[5] The prima facie case has no relevance to a claim of discrimination or EEO reprisal in a Board appeal, and we modify that portion of the initial decision that suggests otherwise.  ID at 24‑25, 31; *see Savage*, 122 M.S.P.R. 615, ¶ 46 (observing that the Board's procedures do not allow for summary judgment).  When an appellant asserts an affirmative defense of EEO retaliation under 42 U.S.C. § 2000e-16, the Board uses the analytical framework set forth in *Savage*, 122 M.S.P.R. 615, ¶¶ 42-43, 49-51, as discussed above.

demeanor‑based credibility determinations.[6]   PFR File, Tab 1 at 13; *see Haebe*, 288 F.3d at 1301.

¶36      Accordingly, we find that the appellant failed to establish any basis for granting her petition for review, and we affirm the initial decision as modified by this Opinion and Order.

## ORDER

¶37      This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

### Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  Title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

---

[6] On review, the appellant contends that the administrative judge found that her supervisor knew about her sleep apnea because he read it in her personnel folder. PFR File, Tab 1 at 13.  The appellant appears to be confused by the administrative judge restating the appellant's testimony.  ID at 25.  The administrative judge actually found insufficient evidence that the appellant's supervisor or any other management official knew about her sleep apnea.  ID at 26.

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.