## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JEREMY MARTIN,<br>       Appellant, | DOCKET NUMBER<br>SF-0752-18-0738-I-1 |
|    v. | |
| DEPARTMENT OF HOMELAND<br>   SECURITY,<br>       Agency. | DATE: July 15, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Jeremy Martin</u>, North Las Vegas, Nevada, pro se.

<u>Jennie E. Breitmeyer</u>, Esquire, Romulus, Michigan, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was a Federal Air Marshal (FAM) with the Las Vegas Field Office (LVFO) of the agency's Transportation Security Administration (TSA). Initial Appeal File (IAF), Tab 4 at 30. In May 2017, the appellant's immediate supervisor notified the appellant that he had a pattern of taking unscheduled sick leave on days adjacent to his regular days off (RDO) and/or his scheduled training days, and that this pattern could result in the appellant's placement on a leave restriction. IAF, Tab 26 at 44-45. Nevertheless, the appellant requested unscheduled sick leave for days that were adjacent to his RDO on three occasions in July and August 2017. *Id.* at 44. On August 15, 2017, the appellant's supervisor notified TSA's Office of Inspection (OOI) that he believed that some of the medical notes the appellant had submitted to support his sick leave requests may have been altered. *Id.* at 43. On August 30, 2017, OOI began an investigation of these allegations. IAF, Tab 7 at 56.

The medical note at issue in this appeal is dated July 5, 2017, and is from the clinic where the appellant underwent a medical procedure that day. *Id.* at 81. The note, which was purportedly signed by the physician assistant (PA) who performed the procedure, states "[the appellant] is under my care." *Id.* In addition, there is an "x" in the boxes to the left of the following two preprinted statements on the note: "was seen in my office today" and "is released to work on." *Id.* After the latter statement, the date "7-7-17" is handwritten. *Id.*

On November 7, 2017, an OOI special agent (SA) interviewed the PA who treated the appellant on July 5, 2017. IAF, Tab 7 at 85. When presented with the note in question, the PA stated that she had not signed the note and that the clinic had no record of providing the appellant with a note for his visit on July 5, 2017. *Id.* The PA further stated that she had instructed the clinic's employees that any doctors' notes that authorized patients to take time off work (time-off notes) must be signed by her. *Id.* She added that it was possible that a former employee had signed the note if it stated only that the appellant was seen in the office, i.e., if it was a seen-in-office note; however, that individual was not authorized to give patients time off work. *Id.*

On November 8, 2017, the SA interviewed the appellant, who provided the following account of the events of July 5, 2017, as set forth in the appellant's written statement and the SA's hearing testimony regarding the interview, as summarized in the initial decision. IAF, Tab 7 at 94-95; Tab 32, Initial Decision (ID) at 3-4. The appellant stated that he went home immediately after his appointment at the clinic, but forgot the doctor's note. IAF, Tab 7 at 94. Consequently, he returned to the clinic and spoke with a receptionist, who readily printed out another note, turned around, and handed it to the appellant. ID at 3-4 (citing Hearing Compact Disc (HCD) (testimony of the SA)). He also told the SA that he did not actually see the receptionist or the PA sign the note. ID at 4 (citing HCD (testimony of the SA)).

The SA then informed the appellant that he had spoken with the PA and that she had told him that: she did not sign the note; the receptionist was not authorized to sign a time-off note; and the clinic did not have a record of the note. *Id.* The appellant reiterated that he had initially left the clinic on July 5, 2017, without the note and returned to retrieve it, and he explicitly denied having falsified the note or any doctor's note. *Id.* Following the interview, the SA drafted a statement that set forth the appellant's version of events. IAF, Tab 7 at 94-95. The appellant reviewed and initialed the statement, thereby confirming its veracity. *Id.*

On December 15, 2017, the appellant took a polygraph examination in connection with the investigation. IAF, Tab 7 at 103. The polygraph detected deception when the appellant denied falsifying any of the doctors' notes at issue in the investigation. *Id.* at 103-04. The appellant then admitted that he had not been completely honest during his prior interview, and the SA interviewed the appellant a second time. *Id.* at 104, 108.

During the interview, the appellant stated that, prior to leaving the clinic on July 5, 2017, he received a medical note from the receptionist; however, after he arrived home, he saw that the note was a seen-in-office note instead of a time-off note. *Id.* at 110. The appellant stated that he then altered the note to reflect that he was authorized to take time off work until July 7, 2017, but immediately felt guilty and tore up the note. *Id.* The appellant claimed that he then drove back to the clinic and requested a note indicating that he required time off, and the receptionist complied. *Id.*

The appellant provided OOI a sworn statement reflecting this version of events. *Id.* In the statement, he indicated that he believed the polygraph's detection of deception was triggered by the immense guilt he felt at having altered the note that he destroyed. *Id.* The appellant added that he had not disclosed this information initially because he did not think it was pertinent to the

investigation, as the note he ultimately provided his supervisor was not falsified. *Id.*

On May 1, 2018, the agency issued a notice proposing to remove the appellant based on charges of lack of candor and altering a doctor's note, each of which was supported by two specifications. IAF, Tab 7 at 45-54. Following the appellant's oral and written replies to the proposal notice, IAF, Tab 4 at 32-45, the deciding official sustained one specification of each charge and she sustained the removal. IAF, Tab 7 at 6-14. The appellant was removed from his position effective July 30, 2018. IAF, Tab 4 at 30.

The appellant filed a Board appeal challenging his removal and he requested a hearing. IAF, Tab 1. He also raised affirmative defenses of age discrimination and harmful procedural error. IAF, Tab 29.

Following a hearing, the administrative judge issued an initial decision that affirmed the appellant's removal. ID at 1, 21. The administrative judge found that the agency proved the charges, ID at 11-15; that there is a nexus between the charged conduct and the efficiency of the service, ID at 15-16; and that removal is a reasonable penalty, ID at 19-20. She further found that the appellant did not prove his affirmative defenses, ID at 16-18.

The appellant has filed a petition for review.[2] Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition, and the appellant has filed a reply to the agency's response. PFR File, Tabs 4, 6.

---

[2] On review, the appellant does not challenge the administrative judge's findings regarding nexus or his affirmative defenses. We discern no reason to disturb these findings.

**ANALYSIS**

The administrative judge correctly found that the agency proved the charges by preponderant evidence.

*Altering a doctor's note*

In this charge, the agency alleged that the appellant altered a doctor's note from the clinic dated July 5, 2017, to show his authorized return to work date as July 7, 2017. IAF, Tab 7 at 46.

In analyzing this charge, the administrative judge considered the relevant documentary evidence and hearing testimony, including the testimony of the appellant, who asserted that he had no reason to alter the medical note because he had never been denied leave and thus had no reason to believe any leave request would have been denied if he failed to produce a medical note. ID at 11 (citing HCD (testimony of the appellant)).

The administrative judge rejected this assertion, finding that it was belied by the fact that the appellant's supervisor had required him to submit a medical note for his July 5 appointment, a day that the appellant was scheduled to work an outbound flight. ID at 11; IAF, Tab 26 at 48. The administrative judge also noted that the appellant called his supervisor on July 5 to inform him that, "per doctor's note," he needed to be off work July 6, when he was again scheduled to work an outbound flight. *Id.* Thus, the administrative judge found, the appellant was under pressure to provide a doctor's note to excuse his absence for both days, and he could expect that his absence would not have been approved if he failed to do so. ID at 11-12.

The appellant challenges this finding on review and asserts that, in assessing the consequences of failing to submit a doctor's note, the administrative judge did not address the relevant hearing testimony. PFR File, Tab 1 at 15. In that regard, the appellant notes that he testified that he had never been denied sick leave, three supervisory air marshals testified that they had never denied sick leave to any FAM, and the LVFO's Special Agent in Charge testified that she

could not recall anyone ever being denied sick leave during her tenure at the LVFO. *Id.* The appellant contends that the totality of the evidence shows that he had no reason to believe that he would have been denied sick leave if he failed to submit a doctor's note for July 6. *Id.*

Although the testimony cited by the appellant indicates that FAMs ordinarily were not denied sick leave, we agree with the administrative judge's assessment of the likely consequences of the appellant's failure to submit a doctor's note to support his July 6 sick leave request. As noted above, the appellant's supervisor had warned him that he might be placed on a leave restriction if he continued his pattern of requesting sick leave for days adjacent to either his RDO or days that he was scheduled to be on a training flight, and his supervisor had required the appellant to submit a doctor's note in support of his sick leave request pertaining to his July 5 appointment. IAF, Tab 26 at 44-45, 48. Given these circumstances, we agree with the administrative judge that the appellant could expect that his leave request would have been denied had he not produced a doctor's note. ID at 12.

In any event, the administrative judge's failure to mention in the initial decision the hearing testimony concerning FAM sick leave requests or, for that matter, any other evidence in the record,[3] does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

As noted by the administrative judge, the appellant repeatedly denied that he altered the note at issue in this appeal. ID at 11. The administrative judge found that the appellant was not credible and that he altered the note to reflect

---

[3] The appellant argues on review that the administrative judge also failed to consider other evidence, including handwriting comparisons that allegedly demonstrate that he did not falsify any note that he submitted to FAM management. PFR File, Tab 1 at 4, 25-26.

that he needed time off work. ID at 14. Accordingly, she found that the agency proved the charge. *Id.*

In sustaining this charge, the administrative judge credited the testimony of the clinic's program manager that, during the period in question, seen-in-clinic notes were not were maintained in the clinic's computer system; however, time-off notes were scanned into the system. ID at 13. The administrative judge found that the only plausible reason that the clinic had no record of the time-off note the appellant submitted to the agency is that the appellant had received a seen-in-clinic note and altered it to reflect that he needed time off work. *Id.*

The appellant challenges this finding on review, arguing that the more plausible reason that the note was not in the clinic's computer system is that the clinic rarely scanned any doctors' notes into the system. PFR File, Tab 1 at 16. In support of this argument, the appellant states that another clinic employee testified during her deposition that time-off notes were not generally scanned into the clinic's computer system unless they authorized time off work for more than 1 day. *Id.* at 22, 24.

Based on our review of the record, we agree with the appellant to the extent that he is arguing that the fact that the clinic has no record of the note that he provided the agency does not necessarily mean that he did not receive that note. As the administrative judge noted in the initial decision, during her testimony, the program manager acknowledged that the policy of scanning time-off-notes into the clinic's computer system was not followed consistently and notes were not scanned into the system with any regularity. ID at 6 (citing HCD (testimony of program manager). Thus, it is certainly feasible that the clinic might not have a record of a time-off note that was issued during this period.

However, we disagree with the appellant's claim that the only plausible finding is that he did not falsify the doctor's note. As discussed below, in finding that the appellant altered the note, the administrative judge identified several reasons that the appellant was not credible, including his demeanor and his

inadequate explanations for the inconsistencies in his various versions of the events at issue. ID at 11-14. Given the administrative judge's explained and comprehensive credibility findings, even assuming arguendo that the clinic did not scan time-off notes into its computer system for 1-day absences, as the appellant contends, or failed to do so consistently, as the program manager testified, we find that this provides no basis for disturbing the administrative judge's finding that the agency proved this charge.

In support of her determination that the appellant was not credible, the administrative judge observed that, after his initial interview with the SA on November 8, 2017, the appellant changed his version of events on the following three points: (1) whether he had the medical note with him when he left the clinic after the procedure; (2) whether the receptionist left his sight before giving him the note; and (3) why he asked for the note. ID at 12-13.

Regarding the first point, as previously noted, the appellant initially stated that he forgot the doctor's note when he left the clinic and returned to the clinic to obtain it. IAF, Tab 7 at 94. After the polygraph detected deception when he denied having falsified a medical note, the appellant revised his version of events, stating that he left the clinic with the note, altered the note after he arrived home to indicate that he was authorized to be off work until July 7, 2017, tore up the note, and returned to the clinic to obtain a new note. *Id.* at 110.

On review, the appellant reiterates the explanation for this apparent inconsistency that he presented in his prehearing submission. PFR File, Tab 1 at 10; IAF, Tab 27 at 10. The appellant asserts that, during his first interview with the SA, he did not mention that he was given a medical note when he left the clinic following his July 5, 2017 appointment because he was focused on the facts surrounding the note that he submitted to the agency, not on the note that he did not provide to the agency. PFR File, Tab 1 at 10.

This explanation is unpersuasive. The appellant did not merely fail to mention that he took a doctor's note with him when he left the clinic following

his appointment; he affirmatively stated that he left the office without a note. If we accept the appellant's revised version of events as true, this statement was patently false. Moreover, his explanation for failing to mention that he had received a note until the polygraph detected deception (i.e., that he was focused on the note that he submitted to the agency) does not address why he initially stated that he left the clinic without a note. Given these circumstances, we agree with the administrative judge that the appellant's inconsistent statements as to whether he left the clinic with a note detract from his credibility. ID at 12.

As for the second point, the administrative judge found that, during his interviews with the SA and in his initial written statement dated November 8, 2017, the appellant did not claim that the receptionist left his view before providing him with the medical note. ID at 12; IAF, Tab 7 at 94, 110. Moreover, the administrative judge found, the appellant's written statement suggested that the act of printing the note and handing it to him was seamless and uninterrupted. ID at 12; IAF, Tab 7 at 94-95, Tab 27 at 8. The administrative judge observed that, during the processing of this appeal, however, the appellant claimed that the receptionist left his view briefly, implying that she had an opportunity to retrieve a provider's signature or sign the note outside of his presence. ID at 12 (citing HCD (testimony of the appellant)); IAF, Tab 27 at 8.

In finding that the appellant's failure to mention that the receptionist left the area before providing him with a doctor's note detracted from his credibility, the administrative judge considered the appellant's statement in his prehearing submission that he did not mention this information earlier because he did not realize that "*how* he obtained the doctor's note was relevant." ID at 12 (emphasis in the original); IAF, Tab 27 at 10. The administrative judge characterized this statement as "self-serving" and did not credit it, finding that the appellant made a point from the outset of explaining how he obtained the note. *Id.* In particular, the administrative judge noted that, in his November 8, 2017 written statement: (1) the appellant claimed that he went home from the clinic without a note and

then returned to obtain the note as an "afterthought"; and (2) the appellant stated, "[The receptionist] just filled out the letter and gave it to me. I had no idea that the doctor did not sign the letter or that the young lady failed to document giving me the letter in the computer system." ID at 12-13; IAF, Tab 7 at 94-95.

On review, the appellant argues that the administrative judge erred by not crediting his statement, asserting that just because something is "self-serving" does not mean it is not true. PFR File, Tab 1 at 16. Although a statement that is self-serving is not necessarily untrue, that does not mean, as the appellant appears to suggest, that his statement was true. Moreover, while the Board has held that an appellant's testimony should not be discredited *solely* on the basis that it is self-serving, *Nicoletti v. Department of Justice*, 60 M.S.P.R. 244, 249 (1993), the self-serving nature of the appellant's statement was just one factor that the administrative judge considered in assessing the appellant's credibility, and we discern no reason to disturb the administrative judge's implied finding that the appellant failed to adequately explain why he did not mention the receptionist leaving his sight until the proceedings below.

Turning to the third point, the administrative judge observed that the appellant initially stated that he decided to obtain a doctor's note as an "afterthought," but subsequently claimed in his December 15, 2017 written statement that he obtained the note because he wanted an extra day off work, as he was sore, physically and emotionally tired, and his supervisor was harassing him. ID at 13; IAF, Tab 7 at 94, 110. The administrative judge rejected as implausible the appellant's argument in his prehearing submission that harassment was not the real reason he requested sick leave and he was merely noting his feelings in making the above statement. ID at 13; IAF, Tab 27 at 18. The administrative judge noted that the appellant reviewed his statement and initialed each paragraph in his statement, and she found that he cannot credibly claim that he did not understand what was written. ID at 13; IAF, Tab 7 at 110.

On review, the appellant does not specifically challenge the administrative judge's finding but, rather, reiterates the argument that the administrative judge rejected in the initial decision. *Compare* PFR File, Tab 1 at 20 *with* IAF, Tab 7 at 18. Thus, this argument amounts to mere disagreement with the administrative judge's findings and, as such, it does not provide a basis for reversal. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (stating that the Board will give due deference to the credibility findings of the administrative judge and will not grant a petition for review based on a party's mere disagreement with those findings); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

In assessing the appellant's credibility, the administrative judge also properly found that the appellant's undisputed untruthfulness in the past adversely affected his credibility in this case. ID at 13-14 (citing *Carrick v. U.S. Postal Service*, 67 M.S.P.R. 280, 283 (1995), *aff'd*, 69 F.3d 555 (Fed. Cir. 1995) (Table) (stating that, although prior misconduct may not be used to prove the charge at issue, impeachment evidence, which may include prior misconduct, can be used to determine the credibility of a witness)). As discussed in the initial decision, in 2013, the appellant called in sick shortly before a flight when he was not sick, and in 2016 he falsely denied smoking an e-cigarette on an airplane while on duty. ID at 6-7.

The administrative judge also made specific demeanor findings to explain why she did not credit the appellant's testimony that he did not commit the alleged misconduct. ID at 14. The administrative judge found that the appellant testified in a manner that was not confident or candid, and repeatedly clenched his hands during his testimony. *Id.* The administrative judge further found that the appellant failed to adequately explain obvious inconsistencies, and that his testimony was convoluted and not plausible. *Id.*; *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

The Board must give due deference to an administrative judge's credibility determinations when, as here, they are based on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Sufficiently sound reasons for overturning an administrative judge's demeanor-based credibility determinations include circumstances when the judge's findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004). The appellant has not presented sound reasons for the Board to revisit the administrative judge's credibility findings. Thus, we discern no reason to disturb the administrative judge's findings in this regard. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility). Accordingly, we find that the administrative judge properly sustained this charge.

*Lack of candor*

In support of the lack of candor charge, the agency alleged that, during his November 8, 2017 interview with the SA, the appellant was not forthcoming and candid when he stated that he had received a doctor's note from the clinic for his visit on July 5, 2017. IAF, Tab 7 at 46.

To prove a lack of candor charge, the agency must prove that an appellant was not fully forthcoming and candid as to all facts and information relevant to the matter at issue, whether or not such information was specifically elicited. *See Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). Lack of candor may involve a failure to disclose something that, in the circumstances, should have been disclosed to make a statement accurate and complete. *Id.* Although a lack of candor charge does not require an affirmative

misrepresentation, it does involve an element of deception, and an agency alleging lack of candor must prove that the appellant knowingly gave incorrect or incomplete information. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶¶ 16-17 (2016).

Applying this standard, the administrative judge found that the appellant lacked candor by not identifying to the SA what type of note he actually received from the clinic. ID at 15. The administrative judge further found that this omission was deceptive because the reason the appellant omitted this information is that he did not want the SA to know he had altered the note and used it to excuse his absence from work on July 6. *Id.* Therefore, the administrative judge found, the agency proved this charge. *Id*.

The appellant challenges this finding on review. PFR File, Tab 1 at 17-20, 24-25. He asserts that, to prove this charge, the agency must show that he attempted to deceive the agency by representing that he received a doctor's note when he had not. *Id.* at 19, 25. The appellant argues, in essence, that the agency cannot prove this charge because he did, in fact, receive a note from the clinic. *Id.* at 25.

This argument is unavailing. Although the appellant received a note from the clinic, the administrative judge found, and we agree, that the type of note he received was a seen-in-office note, not a time-off note. ID at 15. This distinction is significant because, unlike a time-off work note, a seen-in-office note was not sufficient to support the appellant's absence from work on July 6. We also discern no reason to disturb the administrative judge's finding that the appellant failed to inform the SA which type of doctor's note he received so that the SA would not know that the appellant had received a seen-in-office note, rather than a time-off note. ID at 15. Accordingly, we find that the administrative judge correctly sustained this charge.

<u>The administrative judge correctly found that removal is a reasonable penalty.</u>

The appellant also asserts on review that the penalty of removal is unreasonable; however, his only argument in support of this assertion is that the agency failed to prove the charges against him. PFR File, Tab 1 at 26-27. As discussed above, we find that the administrative judge correctly found that the agency proved its charges. Thus, the appellant's argument provides no basis to disturb the removal penalty.

In any event, we agree with the administrative judge that the agency properly considered the relevant factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981),[4] in determining the appropriate penalty and reasonably exercised its management discretion. ID at 20. Recognizing that the Board must accord proper deference to the agency's primary discretion in managing its workforce, we see no reason to disturb the administrative judge's finding that the penalty of removal does not clearly exceed the bounds of reasonableness in this case. *Id.*; *see Douglas*, 5 M.S.P.R. at 306.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such

---

[4] As aggravating factors, the deciding official considered the seriousness of the appellant's misconduct, his status as a law enforcement officer, and his prior discipline, which consisted of a 7-day suspension in 2016 for failing to follow policy when he smoked an e-cigarette on a flight and a 1-day suspension in 2014 for missing his mission when he called in sick although he was not actually sick. Tab 7 at 10; *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253 (2001) (holding that law enforcement officers are held to a higher standard of conduct); *Cordeiro v. Department of the Navy*, 8 M.S.P.R. 103 (1981) (holding that an agency may consider prior discipline in determining the appropriate penalty). As mitigating factors, the deciding official considered the appellant's 25 years of Federal service, his positive performance ratings, and that he did not feel well on July 5. IAF, Tab 7 at 11.

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.